UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT THOMAS BENTLEY,

              Petitioner,

   v.

TIMOTHY McCARTHY, Superintendent,
Auburn Correctional Facility,

           Respondent.

**DECISION AND ORDER**

6:21-CV-06038 EAW

---

## I.    INTRODUCTION

*Pro se* petitioner Robert Thomas Bentley ("Petitioner"), a prisoner in the custody of the New York State Department of Corrections and Community Supervision,[1] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. 1).  The petition challenges the March 29, 2018 denial by the Livingston County Court of New York State (Cohen, J.) of Petitioner's request for a downward modification of his sex offender risk level under New York State's Sex Offender Registration Act ("SORA"), New York Correction Law ("Corr. Law") § 168 *et seq.*  (*See* Dkt. 1 at 1).[2]  For the reasons below, the petition is dismissed as not cognizable.

---

[1]    *See* https://nysdoccslookup.doccs.ny.gov/ (results for DIN 15B3820) (last accessed June 21, 2024).

[2]    Page citations to Petitioner's and Respondent's pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

## II.   BACKGROUND

### A.   State Court Proceedings

On April 22, 2014, Petitioner pleaded guilty to one count of possessing a sexual performance of a child in violation of New York Penal Law ("P.L.") § 263.16, a class E felony, in Livingston County Court of New York State (Wiggins, J.).  (*See* SR: 35-36).[3] On June 17, 2014, Petitioner was sentenced to serve six months in jail, to be followed by a ten-year term of probation; he also was certified as a sex offender within the meaning of SORA and required to comply with SORA's registration requirement.   (SR: 36).[4] Petitioner did not appeal the 2014 judgment.

As Petitioner neared his release date, a SORA proceeding[5] was scheduled before Judge Wiggins.  As required by statute, the SORA Board of Examiners ("BOE") prepared

---

[3]    Citations to "SR:" refer to the Bates-stamped page numbers of the state court records filed electronically at Docket 13-2.

[4]    Because Petitioner was convicted of P.L. § 263.16, he was considered a "[s]ex offender" under SORA.  *See* N.Y. Corr. Law § 168-a(1), (2)(a)(i).  "Upon conviction the court shall certify that the person is a sex offender and shall include the certification in the order of commitment" and "shall also advise the sex offender of the duties of this article." *People v. Hernandez*, 93 N.Y.2d 261, 266 (1999) (quoting N.Y. Corr. Law § 168-d(1)).

[5]    "A defendant's risk level is adjudicated at a SORA hearing, which is civil in nature." *People v. Mingo*, 12 N.Y.3d 563, 571 (2009).  The New York Court of Appeals has "held that '*a SORA risk-level determination is not part of a defendant's sentence*[;] . . . it is a *collateral consequence of a conviction for a sex offense designed not to punish*, but rather to protect the public.'"   *People v. Gravino*, 14 N.Y.3d 546, 556 (2010) (emphases, alteration, and ellipsis in original (quoting *People v. Windham*, 10 N.Y.3d 801, 802 (2008))).  In 1999, after SORA's original procedures for determining risk levels were found to have violated sex offenders' procedural due process rights, *see Doe v. Pataki*, 3 F. Supp. 2d 456, 473 (S.D.N.Y. 1998), "the New York legislature amended the SORA to incorporate the procedural due process protections required by [the district court's decision]." *Doe v. Pataki*, 481 F.3d 69, 71 (2d Cir. 2007) (citing 1999 N.Y. Laws 3061 (codified at scattered

a risk assessment instrument ("RAI") and case summary for Petitioner.  (SR: 36).  The BOE scored Petitioner's presumptive risk level as two (medium risk).[6]  (*Id.*).  However, the BOE recommended an upward departure based on its clinical assessment that Petitioner has a psychological, physical, or organic abnormality that decreases his ability to control impulsive behavior.  (*Id.*).  The prosecution, Petitioner, and Judge Wiggins agreed with the BOE's risk assessment and the appropriateness of an upward departure.  (*Id.*).  Judge Wiggins issued his written decision on June 18, 2014, designating Petitioner as a level three (high risk) sex offender.  (SR: 40-41).  Petitioner never appealed this designation.

While serving his ten-year term of probation on the 2014 conviction, Petitioner entered a guilty plea to one count of second-degree conspiracy (P.L. § 105.15) in Livingston County Court (Cohen, J.) on July 14, 2015.  (SR: 51).  The charge stemmed from Petitioner's involvement in a plan to kidnap and rape his probation officer.  (SR: 31-32).  Petitioner admitted that he and his roommate at a state-operated group residence conspired and prepared to abduct their probation officer, force her to marry both of them, and rape and impregnate her.  (SR: 31-32).  Petitioner explained that they wanted to "hurt [the intended victim] for putting [them] on probation.  It was for revenge."  (SR: 32).

---

sections of N.Y. Corr. Law § 168 *et seq.*)).  "The 1999 amendment applied prospectively to all risk determination hearings conducted after its effective date . . . ."  *Id.*

[6]     The BOE's case summaries in the RAI are considered "reliable hearsay" and are admissible at SORA proceedings.  *People v. Pettigrew*, 14 N.Y.3d 406, 408-09 (2010).  The risk level suggested by the BOE "is merely presumptive, and the assigning of a risk level is within the sound discretion of the SORA court."  *Id.* at 409 (citing N.Y. Corr. Law § 168-n(3)).

At the time he pleaded guilty to the conspiracy charge, Petitioner also admitted to violating the terms and conditions of his probation.  (SR: 31).  On December 22, 2015, Petitioner was sentenced on the conspiracy conviction to an indeterminate term of between five and ten years' incarceration.  (SR: 31, 132, 167).  He was sentenced on the probation violation to an indeterminate term of one-and-one-third to four years' incarceration.  (SR: 133).  The sentences were ordered to run consecutively to each other.  (*Id.*).  Petitioner did not appeal the 2015 conviction or the probation violation.  (*Id.*).

On December 12, 2017, Petitioner filed several *pro se* applications for post-judgment relief, including a petition under Corr. Law § 168-o(2)[7] to modify his risk level under SORA from level three to an unspecified level (the "modification petition").  (SR: 11-15).  Livingston County Court Judge Dennis Cohen ("Judge Cohen") scheduled the modification petition for oral argument and notified Petitioner of his right to counsel; at Petitioner's request, the Livingston County Public Defender's Office was appointed to represent him.  (SR: 53).

---

[7]    This section provides in relevant part that:

[a]ny sex offender required to register or verify pursuant to this article may petition the sentencing court or the court which made the determination regarding the level of notification for an order modifying the level of notification.  The petition shall set forth the level of notification sought, together with the reasons for seeking such determination.  The sex offender shall bear the burden of proving the facts supporting the requested modification by clear and convincing evidence.  Such a petition shall not be considered more than annually. . . .

N.Y. Corr. Law § 168-o(2).

Judge Cohen also requested an updated recommendation from the BOE as to Petitioner's sex offender risk level.  (SR: 30).  In response, the BOE submitted a letter dated February 15, 2018, expressing its "strong[] oppos[ition]" to reducing Petitioner's risk level.  (*See* SR: 30-34).  The BOE cited Petitioner's criminal conduct after being designated a level three offender, specifically his plan to kidnap and rape his probation officer; his preoccupation with sexual activity; and his long history of fantasies about abducting victims and subjecting them to sexual violence.  (SR: 32-34).  The BOE opined that Petitioner's continued interactions with the criminal justice system provided "evidentiary support that his current risk level is accurate and that he is at a higher risk to reoffend as well as a higher danger to public safety."  (SR: 33-34).  The BOE recommended that Judge Cohen decline to consider any request for a modification until Petitioner completed sex offender treatment, managed his mental illness, and demonstrated his "ability to manage himself in a pro-social manner for an appreciable amount of time absent the external controls of supervision."  (SR: 34).

The prosecutor opposed the modification petition on procedural and substantive grounds by affirmation dated February 21, 2018.  (SR: 35-37).  Substantively, the prosecutor cited the BOE's report and the lack of any facts offered to support Petitioner's argument for a downward modification.  (*See id.*).

On March 9, 2018, Petitioner's assigned counsel submitted an amended petition for a downward modification from level three to level two.  (SR: 71-72).  The amended petition asserted that modification was warranted because: (1) Petitioner's crime involved no physical or violent acts or depictions of violence; (2) his father owned the device on which

the child pornography had been found; (3) he had been unable to complete sex offender training through "no fault of [his] own" due to prison transfers; (4) he had not committed any misconduct of a sexual nature while incarcerated; (5) he was trying to "appeal or vacate [his] convictions and sentences based on [unspecified] new information and evidence;" (6) he had the support of his grandmother and other family members if released; and (7) he was a "changed man" who "no longer suffer[ed] from impulsive or sexual thoughts."  (SR: 71-72).

Petitioner and defense counsel appeared before Judge Cohen on March 29, 2018, for the hearing on the request for a downward modification.  (SR: 82-101).  Defense counsel stated that, in addition to the factors cited in his amended petition, Petitioner was applying to take college courses in prison.  (SR: 83-84).  When asked if he had anything to say, Petitioner repeated the allegations in the amended petition filed by defense counsel.  (SR: 84-85).

Judge Cohen denied the modification petition from the bench stating:

> There is nothing that I have [from you] that says that things have changed, that you have had a turnaround on this or anything from your treatment.  And that's not my problem, that's not my fault, and I'm not changing the designation.  You're a level three.  Judge Wiggins thought you were highly dangerous, I think you're highly dangerous, and there is nothing to indicate from your record that anything has changed.  Motion denied.

(SR: 87).

On April 30, 2018, Judge Cohen issued a written decision and order denying the modification petition.  (SR: 8-10).  Judge Cohen "concur[red]" with the BOE that modification of Petitioner's risk level "cannot be considered at this time as the defendant

continues to pose an imminent danger to re-offend despite more than two years[']
incarceration."  (SR: 10).  Judge Cohen explained that by "[f]ailing to complete sex
offender treatment," Petitioner "has accomplished nothing to address the mental illness and
deviance that drives his violent, victimizing sexual preoccupations."  (*Id.*).  According to
Judge Cohen, Judge Wiggins "clearly did not abuse his discretion" in making the initial
risk level determination, noting that it was "proven completely accurate by the sexually-
motivated crimes committed just one year after that level was assigned."  (SR: 10).  In sum,
Judge Cohen found that the record evidence combined with Petitioner's "fail[ure] to
present clear and convincing evidence to warrant a reduction of his SORA risk level"
compelled denial of the modification petition.  (*Id.*).

    Represented by new counsel, Petitioner appealed the denial of the modification
petition to the Appellate Division, Fourth Department, of New York State Supreme Court
("Appellate Division").  (SR: 109-26).  The sole contention was that Judge Cohen abused
his discretion in weighing the evidence and denying the modification.  (*See id.*).  Appellate
counsel argued that Judge Cohen "unnecessarily penalize[ed]" Petitioner for "his failure to
complete a sex offender treatment program, and failure to work on his mental health issues,
despite his several attempts at completing such program and completion of other programs
while incarcerated."  (SR: 119).  Appellate counsel contended that Petitioner's "inmate
progress reports, case plan, and family support demonstrated a risk level three adjudication
over[-]assessed his risk to society and that a reduction of his SORA risk level was
appropriate."  (*Id.*).  Appellate counsel asserted that Judge Cohen erroneously discounted
Petitioner's "several attempts at completing such program and completion of other

programs while incarcerated." (SR: 119; *see also* SR: 121). Appellate counsel concluded that Judge Cohen "abused [his] discretion" in denying Petitioner's modification petition since Petitioner "presented facts that warranted a modification of his existing risk level classification by clear and convincing evidence." (SR: 120; *see also* SR: 122-24).

The prosecution filed a brief in opposition (SR: 127-43), and Petitioner filed a counseled reply (SR: 144-52). On August 20, 2020, the Appellate Division unanimously affirmed the denial of the modification petition. (SR: 172-73). The Appellate Division noted that as the party seeking a modification of his SORA risk level, Petitioner bore the "burden of proving the facts supporting the requested modification by clear and convincing evidence." (SR: 172 (quoting N.Y. Corr. Law § 168-o(2)). The relevant inquiry was whether conditions since the initial risk level determination had changed sufficiently to warrant a modification, and the Appellate Division concluded they had not. (*Id.*). In particular, the Appellate Division found that the evidence at the hearing failed to establish Petitioner's completion of a sex offender treatment program. (*Id.*). Moreover, the hearing evidence affirmatively demonstrated not only that Petitioner had failed to address his mental health issues, but also that he had been convicted of conspiring to kidnap and rape his probation officer. (SR: 172-73). Because Petitioner failed to submit "clear and convincing evidence of facts supporting" a reduction in his risk level, the Appellate Division held that Judge Cohen properly denied the modification petition. (SR: 173).

Petitioner sought leave to appeal to the New York Court of Appeals (SR: 153-77), which the prosecution opposed (SR: 178-79). Leave was denied on December 17, 2020. (SR: 180).

**B.      Federal Habeas Proceeding**

Petitioner filed the instant petition on January 8, 2021.  (Dkt. 1 at 15).  In the first paragraph of the form petition, which asks the "[n]ame and location of court that entered the judgment of conviction you are challenging," Petitioner listed the June 17, 2014 judgment of conviction in Livingston County Court.  (*Id.* at 1 ¶¶ 1(a), 2, 3).  However, when asked to "state every ground on which you claim that you are being held in violation of the Constitution, laws or treaties of the United States" (*id.* at 5 ¶ 12), Petitioner responded as follows: "READ APPEAL BRIEF - PROOF IS MARKED WITH X'S."  (*Id.* (capital letters in original)).  Petitioner has attached to the petition copies of his appellate brief and application for leave to appeal.  (*Id.* at 18-48).  Although Petitioner listed all the crimes to which he pleaded guilty in 2014 and 2015 (*id.* at 1 ¶ 5), he did not mention the 2014 or 2015 judgments elsewhere in the petition.  Petitioner seeks reversal of the decision denying the modification petition and release from prison.  (*Id.* at 15).

Respondent answered the petition (Dkt. 13), filed a memorandum of law in opposition (Dkt. 13-1), and submitted the relevant state court records and transcripts (Dkt. 13-2).  Noting that the petition only challenges the denial of the modification petition, Respondent argues that it is not cognizable under 28 U.S.C. § 2254 because it presents an issue of state law.  (Dkt. 13-1 at 14-16).  Respondent further contends that the claim is unexhausted but must be deemed exhausted and procedurally defaulted because Petitioner failed to present it in federal constitutional terms to the state courts.  (*Id.* at 16-18).  Finally, Respondent argues that the claim is meritless.  (*Id.* at 18-23).  Petitioner did not file a reply.

III.  **DISCUSSION**

    A.  **Exhaustion**

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(1)(A). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845 (citing 28 U.S.C. § 2254(b)(1)).

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam); *O'Sullivan*, 526 U.S. at 845). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 191-92 (2d Cir. 1982) (citing *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).

"For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)). "In such a case, a petitioner no longer has 'remedies

available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b))." *Id.* (citing 28 U.S.C. § 2254(c)).

Respondent argues that Petitioner's claim based on the denial of the downward modification petition was not presented in federal constitutional terms to the Appellate Division and therefore it was not exhausted.  Respondent further contends that because defendants in New York State are entitled to one direct appeal only, the claim should be deemed exhausted and procedurally defaulted.  (Dkt. 13-1 at 17).

While Respondent is correct that "a criminal defendant is entitled to only one direct appeal[8] and one application for leave to appeal to the Court of Appeals," *Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008), Respondent has not cited any authority for the proposition that C.P.L. § 450.10 supplies the mechanism for appealing a post-judgment sex offender risk level designation, and this Court has found none in its research.

As an initial matter, a sentencing court's *certification* of a defendant as a sex offender pursuant to Corr. Law § 168-d is "part of the judgment of conviction and, thus, reviewable" under C.P.L. § 450.10 on direct appeal.  *People v. Nieves*, 2 N.Y.3d 310, 314 (2004) (citing *People v. Hernandez*, 93 N.Y.2d 261, 267-68 (1999)).   In contrast, "postjudgment risk level determinations under" SORA "are not a part of the criminal action or its final adjudication," *id.* (quoting *People v. Stevens*, 91 N.Y.2d 270, 277 (1998)); *see*

---

[8]     C.P.L. § 450.10 "codifies a criminal defendant's common-law right to appeal to an intermediate appellate court." *People v. Ventura*, 17 N.Y.3d 675, 679 (2011)); *see also* N.Y. Crim. Proc. Law § 450.10(1) (stating, in relevant part, that "[a]n appeal to an intermediate appellate court may be taken as of right by the defendant from . . . [a] *judgment* other than one including a sentence of death") (emphasis supplied).

*also Hernandez*, 93 N.Y.2d at 270 (explaining that *Stevens* "distinguished between the risk level determination stage, which was 'not a traditional, technical[,] or integral part of a sentence that somehow relates back to or becomes incorporated into the antecedent judgment of conviction', and a judgment, which melds a conviction with its sentence"). As risk level designations are not part of the judgment, they do not fall within the ambit of C.P.L. § 450.10.

However, the Correction Law provides for a right to appeal the initial and subsequent risk level designations by means of a civil appeal pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Articles 55, 56, and 57.  *See* N.Y. Corr. Law § 168-d(3) ("Either party may appeal as of right from the order pursuant to the provisions of articles fifty-five, fifty-six and fifty-seven of the civil practice law and rules."), *id.* § 168-n(3) (same); *see also Nieves*, 2 N.Y.3d at 315 n.3.

In the context of downward modification petitions such as the one at issue here, Corr. Law § 168-o(2) provides that "[i]n the event that the sex offender's petition to modify the risk level is granted, the *district attorney may appeal as of right* from the order pursuant to the provisions of articles fifty-five, fifty-six and fifty-seven of the civil practice law and rules."  N.Y. Corr. Law § 168-o(2) (emphasis added).  Notwithstanding the omission of any reference in the text of Corr. Law § 168-o(2) to the sex offender's right to appeal, all four departments of the Appellate Division have decided, on the merits, multiple appeals taken from orders denying sex offenders' petitions pursuant to Corr. Law § 168-o(2). *People v. Charles*, 162 A.D.3d 125, 138 (2d Dep't 2018) (collecting cases); *see also People v. Griffith*, 166 A.D.3d 1518, 1519 (4th Dep't 2018) (stating that C.P.L § 450.10(1) does

not grant a sex offender the right to appeal from an order denying a petition for a downward modification of his risk level; relying on C.P.L.R. § 2201 to deem defendant's notice of appeal, which cited C.P.L. § 450.10, to have been filed pursuant to the proper statute, C.P.L.R. § 5701; and reaching the merits of the issues raised on appeal).[9]

The specific provision that limits a criminal defendant to one direct appeal as of right, *see* N.Y. Ct. R. § 500.20(a)(2), does not appear to have an analogue in C.P.L.R. Articles 55, 56, and 57. It seems unlikely that the New York State courts would entertain another appeal of the order denying the downward modification petition; for one thing, any new appeal appears to be untimely. *See* N.Y. C.P.L.R. § 5513(a) (stating that an appeal as of right must be taken within 30 days after service, with notice of entry, of the order sought to be appealed from). That said, it is unclear whether Petitioner faces a complete absence of corrective process in the New York State courts. Thus, the Court cannot say that the petition's only claim should be deemed exhausted under 28 U.S.C. § 2254(c).

However, as discussed below, the petition does not present a question of federal law cognizable on habeas review. The Court therefore bypasses further discussion of the petition's exhaustion status and will proceed to the question of cognizability. *See Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts.").

---

[9]     Petitioner's notice of appeal did not cite any statutory provisions (SR: 6), but given that the Appellate Division considered the petition's merits, that court presumably construed it as having been brought pursuant to the correct statute.

**B.      Lack of a Cognizable Basis for Habeas Relief**

Respondent argues that the petition's only claim—the state courts erroneously

denied the petition for a downward modification of Petitioner's sex offender risk level—is

not cognizable under 28 U.S.C. § 2254 because it presents an issue of state law, i.e., the

proper interpretation and application of Corr. Law § 168-o(2)'s evidentiary standard. (Dkt.

13-1 at 14-16). The Court agrees.

"The habeas statute 'unambiguously provides that a federal court may issue a writ

of habeas corpus to a state prisoner "only on the ground that he is in custody in violation

of the Constitution or laws or treaties of the United States."'" *Swarthout v. Cooke*, 562

U.S. 216, 219 (2011) (quoting *Wilson v. Corcoran*, 562 U.S. 1, 5 (2003) (quoting 28 U.S.C.

§ 2254(a))). The Supreme Court has "'stated many times that 'federal habeas corpus relief

does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Supreme Court also "repeatedly has held

that state courts are the ultimate expositors of state law, and that [federal courts] are bound

by their constructions except in extreme circumstances," *Mullaney v. Wilbur*, 421 U.S. 684,

691 (1975), such as in the "rare case[]" that "it appears to be an 'obvious subterfuge to

evade consideration of a federal issue.'" *Id.* n.11 (quoting *Radio Station WOW, Inc. v.

Johnson*, 326 120, 129 (1945)).

There are no allegations in the petition that remotely implicate "a violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, the

petition itself contains no allegations but instead incorporates by reference Petitioner's

appellate brief challenging the denial of the modification petition. In the appellate brief,

Petitioner cited three New York State cases and two subsections of Corr. Law § 168 but cited no federal or constitutional law.  (SR: 111).  Petitioner focused solely on Judge Cohen's allegedly erroneous weighing of the evidence and concluded that Judge Cohen abused his discretion in denying a downward modification.  (SR: 112, 119-24).  However, the Appellate Division disagreed.  (SR: 172-73).

This Court, sitting in habeas review, is bound by the state courts' determinations on these questions of state law.  *Estelle*, 502 U.S. at 68; *Mullaney*, 421 U.S. at 691.  Petitioner does not argue, and there is no suggestion in the record, that this is one of those "rare cases" in which "extreme circumstances," *Mullaney*, 421 U.S. at 691 & n.11, might justify federal court intervention into a matter that solely concerns state law.  Because the petition contains no questions of federal constitutional magnitude, it is not cognizable under 28 U.S.C. § 2254(a), and it is dismissed on that basis.

## IV.   <u>CONCLUSION</u>

For the reasons above, the petition (Dkt. 1) is dismissed.  Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1), (2).  The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      June 24, 2024
            Rochester, New York